## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

**LELAND B. HOLLIS,**

    Plaintiff,

v.                                                Civil Action No. 1:03CV211

**HARLEY LAPPIN, et. al,**

    Defendants.

## REPORT AND RECOMMENDATION

### I. PROCEDURAL HISTORY

On September 4, 2003, Leland B. Hollis ["Hollis"], an inmate at FCI-Morgantown, Morgantown, West Virginia, filed a *pro se* complaint against Harley Lappin, Dr. Michael Waters, Mary Ellen Thomas, Unknown Warden, Al Haynes, Dr. A. Corddera, Dr. Gonzalez, P.A. Coldiron, and Dr. Vibeke Dankwa.[1] This case was assigned case no. 1:02cv212.

On September 9, 2003, Hollis filed a second *pro se* pre-printed complaint form setting forth the exact same complaints as were alleged in his September 4, 2003 complaint and naming the same defendants and well as additional defendants - PA Phillip Laflur, PA M. Bryant, Dr. Nicholls, Dr.

---

[1] The case was originally filed in the United States District Court for the District of Columbia. By Order entered on September 4, 2003, the case was transferred to this Court. The Court received the case on October 6, 2003. According to the District Court for the District of Columbia, the complaint did not reveal a basis for it to exercise jurisdiction. The district court found that if the cause of action was filed pursuant to the Federal Torts Claim Act ["FTCA"], pursuant to 28 U.S.C. §1402(b), the civil action should proceed in "the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." The district court further found that even considering the case under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) venue was proper in the Northern District of West Virginia because Hollis was seeking medical treatment "for which his current warden would be responsible."



R. Gray, Dr. Roger Humpries, Dr. Nick Zervos, Richie Martain, Dr. Ward Jackson Paine, Dr. Thomas Blume, Dr. William Post, PA Martha Blanco, PA Al Blanco, PA Ronald Whitner, and PA J. Amid. However, along with the pre-printed form, Hollis submitted a document titled "Amended Complaint" wherein he named Dr. Michael Waters, the Federal Bureau of Prisons, and Harley Lappin as the only defendants. The second pre-printed complaint form and amended complaint were assigned case no. 1:03cv211.[2] On October 6, 2003, Hollis filed an Amended Complaint and Motion to Consolidate Complaints. By Order entered on October 31, 2003, Hollis' Motion to Consolidate was granted.

According to the complaint and amended complaint, some of the alleged events occurred at FCI-Morgantown, but others occurred at FCI-Lexington, Lexington, Kentucky, and FCI-Manchester, Manchester, Kentucky. Specifically, Hollis asserts that on January 20, 2002, while incarcerated at FMC-Lexington, he injured his left leg while walking.[3] (Hollis contends he tore his left Achilles tendon). He was initially evaluated by PA Laflur at health services and diagnosed with a muscle spasm. Later that day, he returned to see PA Laflur because his left leg was swollen. PA Laflur recommended Hollis be transported to the University of Kentucky Hospital where he was diagnosed with "torn muscles tendons." Hollis contends he was advised "to return after 10 days conservative care for reevaluation of therapy and/or surgery, that without proper medical care [he] would need total reconstruction of [his] leg." (Complaint p. 8). Hollis alleges that while at FMC-Lexington, he was not returned to the University of Kentucky, but he was seen by an "in house

---

[2]The case was originally filed in the District Court for the District of Columbia. By Order filed on September 9, 2003, the case was transferred to this Court. On October 6, 2003, the Court received the case from the District Court for the District of Columbia.

[3]In addition to his leg injury, Hollis was diagnosed with diabetes mellitus in 1998.

orthro surgeon" and placed in a Bledso-Boot and given pain medication.

On February 19, 2002, Hollis was transferred to FCI-Manchester where he was seen by PA Coldiron and given pain medication. On April 10, 2002, Hollis was transferred to FCI-Morgantown. At FCI-Morgantown, Hollis was examined by an orthopedic surgeon, prescribed crutches, and provided a Bledso Boot, pain medication and physical therapy. Hollis was also referred to Monongalia General Hospital, Morgantown, West Virginia, for an infection in his left leg. Hollis alleges that he almost died from the infection and is permanently disabled, crippled and in constant pain. Hollis contends he has not received proper care or treatment for his leg and further asserts that he has been transferred from institution to institution to shift the financial burden. Hollis contends that "Defendants Dr. Waters have acted with deliberate indifference in failing to diagnose and properly treat Plaintiff. The care and treatment by the Defendant's Physician's Assistant and Prison Doctor constitute a deliberate [sic] which violates the Eight Amendment's Prohibition on cruel and unusual punishment." (Amended Complaint p. 3). According to Hollis, the actions of Dr. Waters was taken under the direction and supervision of the Federal Bureau of Prisons.

Hollis also asserts that "the actions of the warden at all these institutions in transferring [him] and/or attempting to transfer [him] for the purpose of avoiding the cost of appropriate medical care for [his] condition" constituted deliberate indifference to his medical needs. (Complaint p. 8).

Hollis attached to his complaint, copies of his request for administrative remedy which he filed at FCI-Morgantown. In his appeal, Hollis set forth his medical condition and requested a medical transfer to FMC-Lexington. On August 21, 2002, Warden Haynes advised him that an orthopedic specialist had evaluated him in Morgantown on April 24, 2002, and opined that surgery was not necessary and only recommended physical therapy, which he has received on a weekly

3

basis. Warden Haynes further stated that on June 11, 2002, Hollis underwent an orthopedic evaluation in Morgantown and the specialist recommended that physical therapy be continued. Warden Haynes also stated that "a request for medical designation was submitted to the Bureau of Prisons Medical Designator. That request was denied and we were instructed to continue to provide appropriate medical care at this facility." Hollis then filed a Regional Administrative Remedy Appeal in which he stated he had been told by the emergency room physician at Monongalia General Hospital "to tell Dr. Waters and Dr. Zervos to do something about [his] leg because physical therapy is not working." He further states Dr. Zervos had cancelled his physical therapy. He also requested a medical transfer. Hollis' Regional Administrative Remedy Appeal was denied. Thereafter, Hollis filed a Central Office Remedy Appeal which was denied. Hollis was advised that he had been evaluated by an orthopedic specialist on October 2, 2002, who recommend that Hollis undergo a MRI. Hollis underwent a MRI on October 17, 2002, and he was scheduled for an evaluation by another orthopedic specialist for a second opinion. Hollis was advised that he has received medical care and treatment in accordance with BOP policy and that the BOP staff has followed all recommendations.

In addition to proceeding through the BOP's grievance process, Hollis filed a claim under the Federal Tort Claim Act. His claim was denied based on the following: (1) the medical records from FMC Lexington and the University of Kentucky Medical Center did not indicate surgery was necessary or that Hollis had a torn Achilles' tendon; (2) Hollis was diagnosed with a "tear of the muscle insertion to the ligament of the medical or inner portion of the gastrocnemius"; (3) "there is no effective surgical approach for reattaching muscle to the ligament"; (4) Hollis' problem with swelling is caused by a "disruption of the normal circulatory mechanisms, namely the veins and

4

lymphatic vessels in the area of injury. Surgery would cause further damage to these circulatory vessels and would not improve their function"; (5) Hollis' "injury dictates a long and passive course of treatment to allow scar tissue to form and reestablish the muscle to tendon connection"; and (6) "there is no evidence any negligent, wrongful action or omission on the part of any Federal Bureau of Prisons employee was a factor in any injury Mr. Hollis may have incurred. Mr. Hollis' condition was properly diagnosed and is being properly treated." (February 27, 2003, letter of Bill Burlington, Regional Counsel for the Federal Bureau of Prisons, to Mr. Patterson A. DeCamp, Esq. regarding Administrative Tort Claim).

Hollis also sent the Court copies of letters he has sent to attorneys regarding his case and letters he received from attorneys declining to take his case. In the letters, he indicates that he only had a short period of time to file a complaint once he had filed a tort claim and that Dr. Waters had been told what to do about his condition.

Hollis requests injunctive relief including that he be examined by a foot-ankle specialist. He also seeks monetary damages.

This matter is pending before me for initial review and report and recommendation pursuant to LR PL P 83.02. The undersigned has screened Hollis' complaint in accord with the standing order of this Court and in accord with the provisions of 28 U.S.C. §§ 1915(e) and 1915A,[4] and makes the

---

[4] 28 U.S.C. §1915(e)(2)(B) states:
Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . .
    (B) the action or appeal-
        (i) is frivolous or malicious;
        (ii) fails to state a claim on which relief may be granted; or
        (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. §1915A provides, in pertinent part, that:

recommendations set forth below.

## II. ANALYSIS

Based on the Transfer Orders from the District Court for the District of Columbia, it appears the District Court for the District of Columbia was unclear whether Hollis was attempting to file a Bivens action or an action under the Federal Tort Claim Act ["FTCA"]. The undersigned has considered both of Hollis' cases to be filed pursuant to Bivens, which is analogous to a §1983 action, and the FTCA.[5]

## A. Bivens Action

### 1. Claims Against Kentucky Defendants.

Hollis is incarcerated at FCI-Morgantown. He asserts that some of the defendants are located in the State of Kentucky, and that some of the incidents giving rise to his Eighth Amendment claim occurred at FCI-Lexington and FCI- Manchester. In order for a court to hear a case, the court must have both subject matter jurisdiction and personal jurisdiction.

Pursuant to 28 U.S.C. §1331, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Based on the allegations in the complaint, the court has subject matter jurisdiction because Hollis is alleging the

---

(a) Screening.–The court shall review...a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) Grounds for dismissal.–On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

[5]Bivens recognized a claim for damages for violation of the Fourth Amendment against federal agents even though no statute confers such right. The Supreme Court has extended Bivens to those claims involving violation of the Eight Amendment. Carlson v. Green, 446 U.S. 14 (1980).

violation of his Eighth Amendment rights and appears to be bringing a claim under the Federal Torts Claim Act.

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir.2001). The West Virginia long-arm statute is contained in W.Va. Code §56-3-33(a).[6]

---

[6]This section provides as follows:
(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.
(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

The Southern District of West Virginia has succinctly stated as follows regarding personal jurisdiction:

> "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary ... to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry." In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir.1997).
>
> To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interests here would not "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174.

Vass v. Volva Trucks North America, Inc., 304 F. Supp. 2d 851, 854 (S.D. W.Va. 2004).

Pursuant to 28 U.S.C. §1915, the Court can *sua sponte* raise the issue of personal jurisdiction. See Hall v. Herman, 896 F. Supp. 588 (N.D. W.Va. 1995).

With regard to the actions of the defendants at FCI-Lexington and FCI-Manchester - Mary Ellen Thomas, Unknown Warden, Dr. A. Corderra, Dr. Gonzalez, P.A. Coldiron, Dr. Vibeke Dankwa, P.A. Laflur, P.A. Bryant, Dr. Nicholls, Dr. Gray, and Dr. Humpries - Hollis has failed to assert any contact by these defendants with the state of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause. Thus, based on the complaint, the Court cannot exercise personal jurisdiction over these defendants as any action they took appears to have occurred solely in Kentucky and not anywhere in West Virginia, and there is no indication that these

defendants had any contact whatsoever with the State of West Virginia.

Consequently, the complaint against Defendants Mary Ellen Thomas, Unknown Warden, Dr. A. Corderra, P.A. Coldiron, Dr. Gonzalez, Dr. Vibeke Dankwa, P.A. Laflur, P.A. Bryant, Dr. Nicholls, Dr. Gray, and Dr. Humpries should be dismissed under 28 U.S.C. §1915A(b)(1) and 1915(e)(2)(B)(i) as being frivolous because the court lacks personal jurisdiction over these defendants. See Harris v. United States, 2002 WL 824277 (N.D. TX 2002)(unpublished).

### 2. Claims against Zervos, Martain, Paine, Blume, Post, Al Blanco, Martha Blanco, Whitner, Amid and Waters.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A medical condition is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987), cert. denied, 486 U.S. 1006 (1988). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347.

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing

deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990); Norris v. Detrick, 918 F.Supp. 977, 984 (N.D.W.Va.1996), aff'd, 108 F.3d 1373 (4th Cir.1997).

A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

While Hollis named numerous medical providers as defendants in this case, in his pre-printed complaint form, Hollis only alleges that Dr. Waters provided him with improper medical care. Further, in the document titled "amended complaint" Hollis only alleges that Dr. Waters and an unnamed PA were deliberately indifferent to his medical needs.

Thus, Hollis' claims against Zervos, Martain, Paine, Blume, Post, Blanco, Blanco, Whitner, and Amid should be dismissed for failure to state a claim. However, the claim against Dr. Waters should not be dismissed, and Dr. Waters should be served with a copy of the complaint.

10

### 3. Claims against Federal Bureau of Prisons.

Hollis has named the Federal Bureau of Prisons as a defendant. However, a Bivens cause of action cannot be brought against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 486 (1994). Consequently, the Bivens action against the Federal Bureau of Prisons should be dismissed.

### 4. Claims against Lappin and Haynes.

Hollis has alleged that "the actions of the Warden at all these institutions in transfering me/or attempting to transfer me for the purpose of avoiding the cost of appropriate medical care for my conditions constituted deliberate indifference." (Complaint p. 8).[7] With regard to Lappin, it appears to the undersigned that Hollis named Lappin as a defendant merely because he is the Director of the Bureau of Prisons. Hollis asserts that the Bureau of Prisons has shown deliberate indifference to his health and safety. The undersigned finds that the Bivens action against Lappin and Haynes should not be dismissed and that they should be served with a copy of the complaint.

## B. Claims Under the Federal Tort Claim Act

In his amended complaint, Hollis initially states that "this action is brought for violation of Plaintiff's rights and for compensation for damages arising from these violations and damages." Thus, this statement indicates to the undersigned that Hollis wishes to bring a Bivens action. However, Hollis later states that the Federal Bureau of Prisons has a duty to ensure his safety and he discusses the standard of care for medical treatment. These later statements indicate to the undersigned that Hollis is attempting to bring a cause of action under the Federal Tort Claim Act.

---

[7]As discussed previously, the court as no jurisdiction over the Kentucky defendants which include the wardens at FCI-Lexington and FCI-Manchester. The Court only has personal jurisdiction over Defendant Haynes, the warden at FCI-Morgantown.

11

28 U.S.C. §1346 and 28 U.S.C. 2671, et. seq.

Federal inmates may pursue claims under the FTCA for personal injuries sustained while incarcerated because of the negligence of government employees. See United States v. Muniz, 374 U.S. 150, 158, (1963).

The claims under the Federal Tort Claim Act were only raised in the amended complaint in which Hollis specifically named as defendants Dr. Waters, Federal Bureau of Prisons and Lappin. Dr. Waters, Federal Bureau of Prisons and Lappin should be served with a copy of the complaint so they can respond to the claims under the FTCA.

### III. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that Hollis' complaint against Defendants Mary Ellen Thomas, Unknown Warden, Dr. A. Corderra, Dr. Gonzalez, P.A. Coldiron, Dr. Vibeke Dankwa, P.A. Laflur, P.A. Bryant, Dr. Nicholls, Dr. Gray, and Dr. Humpries should be dismissed under 28 U.S.C. §1915A(b)(1) and 1915(e)(2)(B)(i) as being frivolous because the court lacks personal jurisdiction over these defendants.

The complaint against Defendants Zervos, Martain, Paine, Blume, Post, Blanco, Blanco, Whitner, and Amid should be dismissed under 28 U.S.C. §1915A(b)(1) and 1915(e)(2)(B) for failure to state a claim. Additionally, the Bivens claim against the Federal Bureau of Prisons should be dismissed for failure to state a claim. However, the complaint against Defendants Waters, Lappin and Haynes should not be dismissed, and they should be served with a copy of the complaint so they can respond to the Bivens claims made against them.

Finally, Hollis' claims under the FTCA should not be summarily dismissed and Defendants Waters, Lappin and the Bureau of Prisons should served with a copy of the complaint so that they

12

can respond to the FTCA claims.

Any party may file within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to all parties appearing herein.


DATED:   July 21, 2004


JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE