IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

FILED
MAY 2 5 2005

U.S. DISTRICT COURT
CLARKSBURG WV 26301

LELAND B. HOLLIS,

    Plaintiff,

v.                                        Civil Action No. 1:03CV211

HARLEY LAPPIN, Director of Bureau of
Prisons; DR. MICHAEL WATERS,
FCI-Morgantown; MARY ELLEN THOMAS, Warden,
FMC-Lexington; WARDEN, FPC-Manchester;
AL HAYNES, Warden, FCI-Morgantown;
DR. A. CORDDERA, FMC-Lexington;
DR. GONZALEZ, FMC-Manchester;
P.A. COLDIRON, FMC-Manchester;
DR. VIBEKE DANKWA, FMC-Lexington;
PA PHILLIP LAFLUR, FMC-Lexington;
PA M. BRYANT, FMC-Lexington; DR. NICHOLLS,
University of Kentucky Med. Center;
DR. R. GRAY, University of Kentucky Med.
Center; DR. ROGER HUMPRIES, University of
Kentucky Med. Center; DR. NICK ZERVOS,
J.D. Anderson Drive Morgantown, WV;
RICHIE MARTAIN, Heath Works Morgantown, WV;
DR. WARD JACKSON PAINE, Mon. Gen. Hospital;
DR. THOMAS BLUME; Mon. Gen. Hospital;
DR. WILLIAM POST, 943 Maple Drive Morgantown, WV;
PA MARTHA BLANCO, FCI-Morgantown;
PA AL BLANCO, FCI-Morgantown;
PA RONALD WHITNER, FCI-Morgantown; and
PA J. AMID, FCI-Morgantown, and
FEDERAL BUREAU OF PRISONS,

    Defendants.

**Hollis v. Lappin, et al.**                                            **1:03CV211**

**MEMORANDUM OPINION AND ORDER**

**MEMORANDUM OPINION AND ORDER**

Pro se petitioner Leland B. Hollis ("Hollis"), an inmate at FMC Lexington, filed a complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that the defendants provided him with inadequate medical treatment in violation of his right to be protected against cruel and unusual punishment under the Eighth Amendment of the United States Constitution ("Eighth Amendment"). He further alleges violations of the Federal Tort Claims Act ("FTCA").

In accordance with Local Rule of Prisoner Litigation 83.09, the Court referred the matter to Magistrate Judge John S. Kaull, who filed a Report and Recommendation recommending the dismissal of Hollis' complaint against defendants Mary Ellen Thomas ("Thomas"), FPC-Manchester Warden ("Unknown Warden"), Dr. A. Corddera ("Dr. Corddera"), Dr. Gonzalez, Physician's Assistant ("P.A.") Coldiron ("Coldiron"), Dr. Vibeke Dankwa ("Dr. Dankwa"), P.A. Phillip Laflur ("Laflur"), P.A. M. Bryant ("Bryant"), Dr. Robert J. Nicholls, Dr. R. Gray and Dr. Roger Humphries, who are all employed at either a BOP institution in Kentucky or at the University of Kentucky Medical Center ("UKMC"), for lack of personal jurisdiction, and the dismissal of Hollis's complaint against defendants Dr. Nick Zervos ("Dr. Zervos"), Richie Martain, Dr. Ward Jackson Paine, Dr. Thomas

2

**Hollis v. Lappin, et al.**                                    1:03CV211

<u>**MEMORANDUM OPINION AND ORDER**</u>

Blume, Dr. William Post, P.A. Martha Blanco, P.A. Al Blanco, P.A. Ronald Whitner and P.A. J. Amid, for failure to state a claim. 28 U.S.C. §§ 1915(e) & 1915A. The Magistrate further recommended, however, that Hollis' <u>Bivens</u> claims against Dr. Michael Waters ("Dr. Waters"), Harley Lappin ("Lappin") and Warden Al Haynes ("Haynes") and the FTCA allegations against Lappin, Haynes and the Federal Bureau of Prisons ("BOP") should not be dismissed and that those parties should be served with a copy of the complaint and given the opportunity to respond to the allegations against them.

Hollis objects to the Magistrate's dismissal of his <u>Bivens</u> claim against Laflur, Bryant, Thomas, Unknown Warden, Coldiron, and Drs. Gonzalez, Corddera, Dankwa and Zervos, and further requests that this Court serve his complaint on Waters, Lappin, Haynes and the BOP in accordance with the Magistrate's recommendation.[1] After conducting a <u>de novo</u> review of the record, the Court **AFFIRMS** the Magistrate's Report and Recommendation (dckt no. 10).

### I. FACTUAL BACKGROUND

Hollis is an inmate who began serving his term of incarceration on April 16, 2001. He is currently confined at FMC

---

[1] The plaintiff does not challenge the Magistrate's recommendation with regard to the dismissal of defendants Dr. Robert J. Nicholls, Dr. R. Gray, Richie Martain, Dr. Ward Jackson Paine, Dr. Thomas Blume, Dr. William Post, P.A. Al Blanco, P.A. Martha Blanco, P.A. Ronald Whitner and P.A. J. Amid.

**Hollis v. Lappin, et al.**  1:03CV211

## MEMORANDUM OPINION AND ORDER

Lexington and previously served parts of his sentence at FMC Lexington, FCI Manchester and FCI Morgantown.

> In presenting [his] allegations, and in considering a dismissal pursuant to 28 U.S.C. § 1915(d), this Court will assume the veracity of all of the allegations and construe them in the light most favorable to plaintiff, except where they conflict with judicially noticed facts. Therefore, all of the "facts" presented in this Memorandum Opinion are drawn from [Hollis'] complaint, and they represent unproven allegations for all purposes other than the instant decision.

Holsey v. Bass, 519 F. Supp. 395, 397 (4th Cir. 1981).

### A. Hollis' Leg Injury

On January 20, 2002, Hollis injured his left calf while walking down a ramp at FMC Lexington.[2] Subsequently, Laflur, a P.A. at FMC Lexington, evaluated Hollis' leg and diagnosed him with a muscle spasm. Later that day, however, Hollis' leg swelled and Laflur recommended that he be transported to UKMC.

At UKMC, doctors diagnosed Hollis with torn muscle tendons, advised him to return in ten days for reevaluation or surgery and further warned that, without proper medical attention, his leg would require total reconstruction. According to the BOP, however, medical records from FMC Lexington and UKMC indicate that doctors never recommended surgery for Hollis, but only questioned whether

---

[2]Hollis also suffers from diabetes mellitus, which doctors diagnosed in 1988.

4

**Hollis v. Lappin, et al.**                                    1:03CV211

**MEMORANDUM OPINION AND ORDER**

he had developed a compartment syndrome,[3] which is a condition that could require surgery. Further testing allegedly indicated that a compartment syndrome did not cause the swelling in Hollis' leg and UKMC is claimed to have ultimately diagnosed him with a disruption in circulation caused by a "tear of the muscle insertion to the ligament of the medical or inner portion of the gastrocnemius." Unlike a compartment syndrome, however, where swelling results from the expansion or overgrowth of muscle, there is allegedly no effective surgical approach for Hollis' condition because his swelling stems from the veins and lymphatic vessels.

**B.      Hollis' Request for Administrative Remedy**

According to the record, Hollis did not return to UKMC in ten days, but received an examination at FMC Lexington by an "in house orthro [sic] surgeon" who placed him in a Bledso-Boot and prescribed pain medication. Subsequently, on February 19, 2002, the BOP transferred Hollis to FCI Manchester, where he received pain medication from a P.A. named Coldiron, and, two months after that, transferred him to FCI Morgantown, where an orthopedic

---

[3]Compartment syndrome is a condition where "the expansion or overgrowth of enclosed tissue, [such as a muscle], within its anatomical enclosure [produces] pressure that interferes with circulation and adversely affects the function and health of the tissue itself." Lexico Publishing Group, Dictionary.com, "Compartment Syndrome," at http://dictionary.reference.com/search?q=compartment%20syndrome (last updated 2005) (citing Merriam-Webster's Medical Desk Dictionary (Merriam Webster, Inc. rev. ed. 2002)).

5

surgeon prescribed physical therapy and provided him with crutches, another Bledso Boot and pain medication. Hollis, however, did not agree with this method of treatment and believed surgery at UKMC to be the only appropriate course of action. Consequently, on May 29, 2002, Hollis filed a request for administrative remedy in which he urged the BOP to transfer him back to FMC Lexington. On August 21, 2002, Haynes, the Warden at FCI Morgantown, denied Hollis' transfer request in accordance with the BOP Medical Designator's decision to deny a previously filed request for medical redesignation and on the ground that he would continue to receive appropriate medical treatment "consistent with community standards."

C.  **Hollis' Visit to Monongalia General Hospital**

One week later, on August 29, 2002, Dr. Zervos, a Morgantown, West Virginia, physician who administered Hollis' physical therapy, suspected a blood clot in Hollis' leg and recommended that he be examined at Monongalia General Hospital ("Mon General") in Morgantown, West Virginia. According to Hollis, doctors at Mon General discovered an infection in his leg which almost caused his death and resulted in permanent disability and constant leg pain. Administrative remedy appeals subsequently filed by Hollis, however, only reflect that doctors at Mon General did not find a blot clot in his leg and make no mention of an infection.

Hollis further alleges that an emergency room physician at Mon General directed him to "tell Dr. Waters and Dr. Zervos to do something about [your] leg because physical therapy is not working." According to the BOP, an orthopedic specialist subsequently evaluated Hollis at FCI Morgantown and recommended that he continue receiving physical therapy; however, Hollis claims that on August 30, 2002, the day after his visit to Mon General, Dr. Zervos canceled his physical therapy sessions without notice. Hollis does not specify the number of sessions Dr. Zervos canceled.

D.  **Hollis' Administrative Remedy Appeals**

On September 2, 2002, Hollis appealed Haynes' denial of his administrative remedy request by filing a regional administrative remedy appeal, in which he urged the BOP to reconsider his request for a medical transfer to FMC Lexington. In support of his appeal, he included information about his leg infection, the cancellation of his physical therapy and his diabetes. He further stated that Dr. Waters, who is the supervising physician at FCI Morgantown, never favored the use of physical therapy, that physical therapy is an inappropriate course of treatment for his leg and that he desired to return to FMC Lexington in order to receive surgery at UKMC.

**Hollis v. Lappin, et al.**                                    1:03CV211

## MEMORANDUM OPINION AND ORDER

On September 18, 2002, Lappin, the then Regional Director of the Mid-Atlantic Regional Office of the BOP, denied Hollis' request on the grounds that "clinical staff requested re-designation to a medical referral center, however, the request was denied by the Office of Medical Designations and Transportation [and] [s]taff were advised to continue your treatment at your current institution." Consequently, on September 26, 2002, Hollis filed a Central Office Administrative Remedy Appeal, which the Central Office denied on November 5, 2002. In support of its position, the Central Office stated that "[t]he record reflects you are receiving medical care and treatment in accordance with Bureau policy. There is no clinical indication which would indicate that there was a delay in your medical care and treatment as FCI Morgantown medical staff have followed all recommendations." It further noted that, on October 2, 2002, an orthopedic specialist recommended that Hollis undergo an MRI. Hollis allegedly underwent that MRI on October 17, 2002, and the BOP claims to have subsequently scheduled an evaluation with another orthopedic specialist for a second opinion.

Having exhausted his administrative remedies, Hollis filed suit in federal court seeking an immediate expert orthopedic consultation regarding his prospects for surgery, the future costs

of his medical care and treatment, monetary damages in excess of $500,000 and an order enjoining the BOP from both transferring him without his consent and providing him with inadequate medical care in the future. He now asks this Court not to adopt the Magistrate's recommendation that his complaint against Laflur, Bryant, Thomas, Unknown Warden, Coldiron, Drs. Gonzalez, Corddera, Dankwa and Zervos be dismissed.

## II. LEGAL ANALYSIS

At bottom, Hollis argues that the defendants violated his Eighth Amendment right to adequate medical assistance when they transferred him between institutions and prescribed physical therapy for his leg instead of allowing him to remain at FMC Lexington and referring him back to UKMC for surgery.

A district court has the authority to dismiss an *in forma pauperis* action that is "frivolous or malicious" or "fails to state a claim on which relief can be granted." 28 U.S.C. § 1915(e)(II)(B). An action may be dismissed as "frivolous" if a waivable affirmative defense, such as lack of personal jurisdiction, is "clear from the face of the complaint," even if that defense has not been raised by any party. *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 959-60 (4th Cir. 1995) (Motz, dissenting) (affirming district court's *sua sponte* dismissal of

**Hollis v. Lappin, et al.**                                          **1:03CV211**

<u>**MEMORANDUM OPINION AND ORDER**</u>

§ 1983 petition as time-barred by applicable statute of limitations). <u>See</u> <u>also</u> <u>Hall v. Herman</u>, 896 F. Supp. 588 (N.D. W. Va. 1995). Further, "a district court is not bound to 'accept without question the truth of the plaintiff's allegations' as it might be when considering a motion under Rule 12(b)(6) . . . [but is permitted] to apply common sense, reject the fantastic, and rebut alleged matters with judicially noticeable facts." <u>Id.</u> at 954 (citing <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992)).

As the following discussion demonstrates, it is clear on the face of the complaint that this Court has no personal jurisdiction over Laflur, Bryant, Thomas, Unknown Warden, Coldiron, or Drs. Gonzalez, Corddera or Dankwa because all are employed at the BOP's Kentucky institutions. Moreover, Hollis' complaint fails to state a claim against Dr. Zervos.

**A.    <u>Personal Jurisdiction</u>**

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." <u>Ruhrgas Ag v. Marathon Oil Co.</u>, 526 U.S. 574, 577 (1999). Although a district court has subject matter jurisdiction over all "civil actions arising under the Constitution, laws, or treaties of the

United States," such as Hollis' claims under the Eighth Amendment and the FTCA, personal jurisdiction must be authorized by state law and must also comply with the constitutional requirements of due process. 28 U.S.C. § 1331; Fed. R. Civ. P. 4(K)(1)(A); International Shoe v. Washington, 326 U.S. 310, 316 (1945); Carefirst of Maryland v. Carefirst Pregnancy Ctrs., 334 F.3d 390 (4th Cir. 2003). International Shoe v. Washington, 326 U.S. 310, 316 (1945); Griffith & Coe Adver., Inc. v. Farmers & Merchs. Bank & Trust, 215 W. Va. 428, 431 (2004).

Thus, the Court's analysis of whether personal jurisdiction exists is a two-step process. The first step requires the Court to determine whether the defendant's actions satisfy the personal jurisdiction statutes set forth in Section 56-3-33 of the West Virginia Code, and the second step requires a determination of whether the defendant's contacts with West Virginia satisfy federal due process. See Griffith & Coe, 215 W. Va. at 431. When a district court rules on personal jurisdiction without holding an evidentiary hearing, it must view the facts in the light most favorable to the plaintiff to determine whether the plaintiff has made a prima facie showing. Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004).

**Hollis v. Lappin, et al.**                                    **1:03CV211**

**MEMORANDUM OPINION AND ORDER**

### 1. The West Virginia Long-Arm Statute

Under section 56-3-33 of the West Virginia Code, jurisdiction is proper if the defendant is:

> (1) Transacting any business in this state;
> (2) Contracting to supply services or things in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, that he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> (6) Having an interest in, using or possessing real property in this state; or
> (7) Contracting to insure any person, property or risk located within this state at the time of contracting.

### 2. Due Process Clause

The Due Process Clause of the United States Constitution requires that a defendant have such purposeful minimum contacts with the forum state that requiring him to appear there does not "offend traditional notions of fair play and substantial justice."

12

In re Celotex Corp., 124 F.3d 619, 627 (4th Cir. 1997). Such jurisdiction can be specific or general.

In determining whether specific jurisdiction exists, the Court looks at "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" Mitrano, 377 F.3d at 406-07 (quoting A.L.S. Scan, Inc. v. Digital Srvc. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)). General jurisdiction, however, is based on a defendant's "continuous and systematic" contacts with West Virginia. A.L.S. Scan, Inc., 293 F.3d at 711-712.

### 3. Discussion

Hollis alleges that Drs. Gonzalez, Corddera and Dankwa, as well as Laflur, Thomas, Coldiron, Bryant and Unknown Warden committed acts which violated his Eighth Amendment rights. He does not, however, allege that any of these acts occurred within the state of West Virginia or caused harm within the state. Further, he does not allege that the defendants had any other contact with West Virginia that would provide a basis for jurisdiction. In point of fact, all of the acts attributed to these defendants

Hollis v. Lappin, et al.                                    1:03CV211

**MEMORANDUM OPINION AND ORDER**

occurred solely in Kentucky. Thus, because it is clear on the face of the complaint that the Court lacks personal jurisdiction over Drs. Gonzalez, Corddera and Dankwa, as well as Laflur, Thomas, Coldiron, Bryant and Unknown Warden, Hollis' claims against them are frivolous and must be **DISMISSED**.

B. **Failure to State a Claim**

Further, Hollis' allegations against Dr. Zervos must be dismissed for failure to state an inadequate medical assistance claim.[4]

"A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 2003). Whether a plaintiff has stated a cognizable claim in his complaint, however, depends on the applicable law. Id.

1. **Applicable Law**

To state a valid Eighth Amendment claim for cruel and unusual punishment based on inadequate medical treatment, a petitioner "must allege acts or omissions sufficiently harmful to evidence

---

[4] It should be noted that personal jurisdiction is not an issue with regard to Dr. Zervos, who practices medicine in the state of West Virginia and also provided Hollis with medical treatment in West Virginia.

deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."[5] Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (the mere fact that a prisoner disagrees with his course of treatment does not give rise to a valid claim). This standard subjects prison officials to liability only when they are subjectively aware that the inmate faces a substantial risk of harm, and they fail to take reasonable measures to abate that risk. See Farmer v. Brennan, 511 U.S. 825, 847 (1994); Wilson, 501 U.S. at 298 ("Allegations of 'inadvertent failure to provide medical care,' or of a 'negligent . . . diagnosis,' simply fail to establish the requisite culpable state of mind"); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) ("treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience, or to be intolerable to fundamental fairness").

---

[5] A medical need is "serious" if a physician has diagnosed the condition as needing treatment, the need for treatment is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," or "a delay in treatment causes a life-long handicap or permanent loss." Myers v. Milbert, 281 F.Supp.2d 859, 863 (4th Cir. 2003) (citations omitted).

Hollis v. Lappin, et al.                                    1:03CV211

**MEMORANDUM OPINION AND ORDER**

2. **Discussion**

Hollis urges this Court to find that Dr. Zervos acted with deliberate indifference to his serious medical needs. His complaint, however, contains no specific allegations against Dr. Zervos. In point of fact, the only doctor specifically referenced in Hollis' complaint is Dr. Waters.

Further, a review of the record reveals that specific allegations against Dr. Zervos appear only in Hollis' objection to the Magistrate's report and recommendation and in his requests for administrative appeal, in which he asserted that Dr. Zervos canceled his physical therapy sessions. Hollis does not, however, indicate how the alleged cancellation of his physical therapy constituted a substantial risk of harm to him.[6] Moreover, his own arguments support a finding that it is the *use*, rather than the cancellation, of physical therapy that constituted such a risk. According to him, the only medically appropriate prescription in his case is surgery and he may lose his leg if the BOP continues to prescribe physical therapy as a course of treatment. Thus, his argument that Dr. Zervos' alleged cancellation of his physical

---

[6]Hollis also does not specify whether Dr. Zervos canceled one of his physical therapy sessions or all future physical therapy sessions.

16

therapy session denied him adequate medical assistance is without merit.

Further, the arguments raised by Hollis in his objection to the Magistrate's report and recommendation, which asserts that Dr. Zervos "played a key role in [his] medical treatment," showed deliberate indifference to his medical needs by failing to provide "the very basic standard of medical care" and conspired to "pass on the cost of his medical care to each institution he was sent [to]," are over-broad and provide no indication that Dr. Zervos subjectively realized that Hollis faced a substantial risk of serious harm and failed to take necessary measures to abate that risk. Accordingly, Hollis' claim against Dr. Zervos must be **DISMISSED** for failure to state a claim.

### III. CONCLUSION

Because it is clear on the face of the complaint that this Court lacks personal jurisdiction over Drs. Gonzalez, Corddera and Dankwa, as well as Laflur, Thomas, Coldiron, Bryant and Unknown Warden, and because the plaintiff fails to state a claim with regard to Dr. Zervos, this Court **AFFIRMS** the Magistrate's Report and Recommendation and **ORDERS** that Hollis' complaint against defendants Laflur, Bryant, Thomas, Unknown Warden, Coldiron and Drs. Gonzalez, Corddera, Dankwa and Zervos be **DISMISSED WITH**

**Hollis v. Lappin, et al.**                                            1:03CV211

## MEMORANDUM OPINION AND ORDER

**PREJUDICE** and that these defendants be removed from the style of the case. Further, because Hollis does not object to the Magistrate's recommendation that defendants Dr. Robert J. Nicholls, Dr. R. Gray, Dr. Roger Humphries, Richie Martain, Dr. Ward Jackson Paine, Dr. Thomas Blume, Dr. William Post, P.A. Martha Blanco, P.A. Al Blanco, P.A. Ronald Whitner and P.A. J. Amid be dismissed, this Court **ADOPTS** the Magistrate's Report and Recommendation with respect to those defendants and **DISMISSES WITH PREJUDICE** Dr. Robert J. Nicholls, Dr. R. Gray, Dr. Roger Humphries, Richie Martain, Dr. Ward Jackson Paine, Dr. Thomas Blume, Dr. William Post, P.A. Martha Blanco, P.A. Al Blanco, P.A. Ronald Whitner and P.A. J. Amid and **ORDERS** that they be removed from the style of the case.

The plaintiff's <u>Bivens</u> claims against Dr. Waters, Lappin and Haynes and his FTCA claim against Lappin, Haynes and the BOP remain, and the Court **ORDERS** the Clerk to serve a summons and complaint on those defendants.

All other motions are **DENIED AS MOOT** in light of the Court's ruling.

It is so **ORDERED**.

**Hollis v. Lappin, et al.**                                      1:03CV211

## MEMORANDUM OPINION AND ORDER

The Clerk is directed to mail a certified copy of this Order to the petitioner, to counsel of record, and to Magistrate Judge Kaull.

DATED: May  25 , 2005

*/s/ Irene M. Keeley*
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE